UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
|                                         )
| GORDON DUKE,                            )    Civil Action No.:
|                                         )
| Plaintiff                               )
|                                         )
| v.                                      )
|                                         )
| COMMUNITY HEALTH                        )
| CONNECTIONS, INC. and                   )
| TERRY F. OSBORNE II, D.O.,              )
|                                         )
| Defendants                              )
|_____)

## VERIFIED COMPLAINT AND JURY CLAIM

1.      Gordon Duke ("Duke"), by and through his undersigned counsel, files this Verified Complaint against Community Health Connections, Inc. ("CHC") and Terry F. Osborne II, D.O. ("Dr. Osborne").

## PARTIES

2.      Duke is an individual person who currently resides in Athol, Massachusetts.

3.      CHC is a duly organized Massachusetts corporation providing health care services. CHC is a Federally Qualified Community Health Center. One of CHC's locations is the Gardner Community Health Center ("GCHC") in Fitchburg, Massachusetts.

4.      CHC holds itself out as having expertise in providing "Treatment for…co-occurring disorders[.]" *See* Exhibit A.

5.      Dr. Osborne is a psychiatrist who was at all relevant times employed by CHC at GCHC. Dr. Osborne provided ongoing treatment to Duke while Duke treated at GCHC.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper under 28 U.S.C. § 1346.

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 and the Local Rules of the United States District Court for the District of Massachusetts.

## FACTS

8.      After graduating from Emerson College in 2004, Duke moved to California and worked concurrently as a talent agent for Brick Entertainment. Duke then served as a varsity-level coach at New Community Jewish High School and Chaminade College Preparatory High School. In 2008, Duke began pursuing his Master's Degree in Religious Studies at California State University, Northridge and Long Beach, and he graduated in 2010 with a 4.0 G.P.A.

9.      Duke, beginning in late 2010/early 2011, sought treatment for amphetamine dependency, with Adderall as his drug of choice.

10.     On or about January 24, 2012, Duke was admitted to Emerson Hospital in Massachusetts for detox and treatment of symptoms of acute amphetamine withdrawal.

11.     On or about February 2, 2014, Duke was transferred from Emerson Hospital to McLean Hospital's Ambulatory Treatment Center at Naukeag in Massachusetts to continue his substance abuse treatment in its inpatient program. McLean Hospital's Ambulatory Treatment Center at Naukeag specializes in treating substance use disorder and co-occurring disorders (*i.e.*, individuals whose substance use disorder is complicated by psychiatric illness).

12.     Duke remained at McClean Hospital's Ambulatory Treatment Center at Naukeag until March 5, 2012, on which date he was discharged after successfully completing the inpatient program.

13.     Duke did not take amphetamines at all during any time he spent at Emerson Hospital and McLean Hospital, from January 24, 2012 to March 5, 2012, and when he was completely off amphetamines when he was discharged from McClean Hospital's Ambulatory Treatment Center at Naukeag on March 5, 2012.

14.     Duke became an ongoing patient of GCHC starting in March 2012.

15.     In May 2012, Casie Short, P.A., of GCHC, prescribed Clonidine for Duke. Clonidine is a medication used to ease drug withdrawal symptoms.

16.     In July 2012, Duke began treating with Dr. Osborne. Duke continued treating with Dr. Osborne until March 2014.

17.     By August 2012, Dr. Osborne prescribed for Duke amphetamine-based medication.

18.     Dr. Osborne knew or should have known that Duke was a recovering amphetamine addict and knew or should have known that prescribing amphetamine-based medication to Mr. Duke was inappropriate.

19.     Duke's medical records, to which Dr. Osborne had access, indicated that Duke was a recovering amphetamine addict. Duke, as well as Duke's mother, also told Dr. Osborne that Duke was a recovering amphetamine addict.

20.     Duke trusted that Dr. Osborne would provide him competent treatment.

21.     While Duke treated with Dr. Osborne, Dr. Osborne prescribed for Duke, and Duke accordingly took, amphetamine-based medications such as Selegiline, Vyvanse, and Adderall.

22.     As a result of taking the amphetamine-based medication that Dr. Osborne prescribed for him, Duke showed signs of relapse into amphetamine dependency by September 2013.

23.     Over time, Dr. Osborne increased the dosages of Duke's amphetamine-based medication.

24.     By January 2014, Dr. Osborne was prescribing for Duke a dangerous and potentially lethal amount of amphetamine-based medication: 100 mg daily of Adderall alone.

25.     By January 2014, Duke had fully relapsed into amphetamine dependence.

26.     As a result of his relapse, in May 2014, Duke lost his job as the Director of Religious Education and Spiritual Development at First Church Unitarian, Littleton, Massachusetts.

27.     Duke suffered from paranoia, delusions, and sometimes could not sleep for days as a result of his relapse into amphetamine dependence.

28.     In September 2014 and November 2014, Duke was arrested in Rhode Island for illegally obtaining Adderall.

29.     In October 2015, Dr. Osborne falsely informed the prosecutor in Rhode Island Drug Court that Duke was not drug dependent and that Duke did not have a problem with drug addiction. Dr. Osborne's statements resulted in Duke's cases being removed from Rhode Island Drug Court.

30.     Duke has been hospitalized or otherwise treated multiple times for substance abuse since being prescribed amphetamine-based medication by Dr. Osborne and he continues to exhibit symptoms of neurotoxicity.

31.     Duke's relapse to amphetamine addition as a direct result of Dr. Osborne's errors and omissions caused Duke to suffer a severely altered mental state.

32.     Not until October 2015 had Duke overcome his amphetamine addiction as triggered by Dr. Osborne.

33.     On August 26, 2016, Duke presented his claim to the U.S. Department of Health and Human Services pursuant to the Federal Tort Claims Act. The U.S. Department of Health and Human Services denied Duke's claim on February 15, 2017. On March 1, 2017, Duke in writing requested reconsideration by the U.S. Department of Health and Human Services, which denied the request on September 15, 2017. The September 15, 2017, letter informed Duke that, pursuant to 28 U.S.C. §2401(b), he had six months within which to file suit in U.S. district court.

## Count 1: Negligence (as to Dr. Osborne)

34. Duke repeats and realleges the contents of the prior paragraphs as if set forth in full herein.

35. Dr. Osborne is liable for negligently providing treatment to Duke.

36. Dr. Osborne knew or should have known that Duke was a recovering amphetamine addict and knew or should have known that it was inappropriate to prescribe him amphetamine-based medication. Dr. Osborne prescribed Duke inappropriate amphetamine-based medication anyway.

37. Dr. Osborne failed to warn Duke of possible side effects of taking amphetamine-based medication, including but not limited to failing to warn Duke that taking amphetamine-based medication would increase the likelihood of triggering a relapse of his dependency. Duke did, in fact, become dependent again on amphetamine-based drugs.

38. Dr. Osborne prescribed Duke excessive, dangerously large, and potentially lethal doses of amphetamine-based medication

39. Duke suffered ongoing injuries and has accrued damages that are the direct and proximate result of Dr. Osborne's negligence, including but not limited to: (a) exacerbation of underlying psychological, anxiety and chemical dependency issues; (b) relapse into dependency; (c) loss of a job; (d) multiple arrests for procuring Adderall without a prescription; (e) severe emotional distress, to which Duke is especially vulnerable due to his co-occurring disorder; (f) several hospitalizations and extensive treatment in order to overcome his Adderall addiction a second time; and, (g) symptoms of amphetamine neurotoxicity which continue to this day.

WHEREFORE, Duke hereby demands judgment by this Court against Dr. Osborne in an amount which is adequate to compensate him for his damages to the fullest extent available at law.

## Count 2: Gross Negligence (as to Dr. Osborne)

40.    Duke repeats and realleges the contents of the prior paragraphs as if set forth in full herein.

41.    Duke suffered ongoing injuries and has accrued damages that are the direct and proximate result of Dr. Osborne's gross negligence, including but not limited to: (a) exacerbation of underlying psychological, anxiety and chemical dependency issues; (b) relapse into dependency; (c) loss of a job; (d) multiple arrests for procuring Adderall without a prescription; (e) severe emotional distress, to which Duke is especially vulnerable due to his co-occurring

4

disorder; (f) several hospitalizations and extensive treatment in order to overcome his Adderall addiction a second time; and, (g) symptoms of amphetamine neurotoxicity which continue to this day.

WHEREFORE, Duke hereby demands judgment by this Court against Dr. Osborne in an amount which is adequate to compensate him for his damages to the fullest extent available at law.

## Count 3: Negligence (as to CHC)

42.     Duke repeats and realleges the contents of the prior paragraphs as if set forth in full herein.

43.     CHC did not supervise Dr. Osborne properly and adequately in his prescription practice, including but not limited to his prescription practice for Schedule II controlled substances.

44.     CHC did not supervise Dr. Osborne properly and adequately in providing treatment to Duke.

45.     CHC failed to investigate and failed to act when it knew or should have known about Dr. Osborne's negligent treatment of Duke.

46.     Duke suffered ongoing injuries and has accrued damages that are the direct and proximate result of CHC's negligence, including but not limited to: (a) exacerbation of underlying psychological, anxiety and chemical dependency issues; (b) relapse into dependency; (c) loss of a job; (d) multiple arrests for procuring Adderall without a prescription; (e) severe emotional distress, to which Duke is especially vulnerable due to his co-occurring disorder; (f) several hospitalizations and extensive treatment in order to overcome his Adderall addiction a second time; and, (g) symptoms of amphetamine neurotoxicity which continue to this day.

WHEREFORE, Duke hereby demands judgment by this Court against CHC in an amount which is adequate to compensate him for his damages to the fullest extent available at law.

## Count 4: Intentional or Reckless Infliction of Emotional Distress (All Defendants)

47.     Duke repeats and realleges the contents of the prior paragraphs as if set forth in full herein.

48.     Defendants are liable for intentional or reckless infliction of emotional distress upon Duke.

49.     The injuries sustained by Duke are the direct and proximate result of Defendants' intentional or reckless infliction of emotional distress upon Duke.

50.     Duke suffered ongoing injuries and has accrued damages that are the direct and proximate result of Defendants' intentional or reckless infliction of emotional distress, including but not limited to: (a) exacerbation of underlying psychological, anxiety and chemical

dependency issues; (b) relapse into dependency; (c) loss of a job; (d) multiple arrests for procuring Adderall without a prescription; (e) severe emotional distress, to which Duke is especially vulnerable due to his co-occurring disorder; (f) several hospitalizations and extensive treatment in order to overcome his Adderall addiction a second time; and, (g) symptoms of amphetamine neurotoxicity which continue to this day.

WHEREFORE, Duke hereby demands judgment by this Court against Defendants in an amount which is adequate to compensate him for his damages to the fullest extent available at law.

## Count 5: Negligent Infliction of Emotional Distress (All Defendants)

51.     Duke repeats and realleges the contents of the prior paragraphs as if set forth in full herein.

52.     All Defendants are liable for negligent infliction of emotional distress upon Duke.

53.     The injuries sustained by Duke are the direct and proximate result of Defendants' negligent infliction of emotional distress upon Duke.

54.     Duke suffered ongoing injuries and has accrued damages that are the direct and proximate result of Defendants' negligent infliction of emotional distress, including but not limited to: (a) exacerbation of underlying psychological, anxiety and chemical dependency issues; (b) relapse into dependency; (c) loss of a job; (d) multiple arrests for procuring Adderall without a prescription; (e) severe emotional distress, to which Duke is especially vulnerable due to his co-occurring disorder; (f) several hospitalizations and extensive treatment in order to overcome his Adderall addiction a second time; and, (g) symptoms of amphetamine neurotoxicity which continue to this day.

WHEREFORE, Duke hereby demands judgment by this Court against Defendants in an amount which is adequate to compensate him for his damages to the fullest extent available at law.

## PRAYER FOR RELIEF

WHEREFORE, Duke prays that this Court:

1.     Award appropriate compensatory damages, in an amount determined at trial, and any multiple, consequential, and punitive damages, interest, and costs and attorney's fees to which he may be entitled;

2.     Order such other further relief as the Court may deem just and proper.

## JURY DEMAND

Duke requests a jury trial.

## **VERIFICATION**

I am the Plaintiff in this matter. I have personal knowledge of the above-alleged facts set out in this Complaint and I verify that all of the factual statements contained therein are true and correct to the best of my knowledge and understanding.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 2, 2018.

Gordon Duke

Respectfully submitted,

GORDON DUKE,

By his attorney,

/s/ Christian G. Samito
Christian G. Samito, BBO# 639825
Samito Law, LLC
15 Broad Street, Suite 800
Boston, MA 02109
(617) 523-0144 (telephone)
Christian@samitolaw.com
www.samitolaw.com

Date:  February 16, 2018

Tab A

Behavioral Health | Community Health Connections

Wednesday, August 3, 2016   Medical Services   Dental Services   Behavioral Health   Pharmacy Services   School Programs                    Search...   ‹

# Community Health Connections
## We take great care of you.

| Home | About Us | Our Locations | ACTION Health Services | Our Services | Newsroom | Events | Employment Opportunities |

**TODAY'S NEWS**   Services for children

## BEHAVIORAL HEALTH

Available at all sites and include:

- Treatment for depression, anxiety, co-occurring disorders
- All ages
- Individual, couples and family therapy
- Dual diagnosis group therapy
- Psychiatry (Fitchburg and Gardner) for existing medial patients 18+ years of age

*Share the Health...*

y — f — g⁺ — Ᵽ — t — in

### WE SPEAK YOUR LANGUAGE

Hablamos su idioma

Falamos sua lingua

**NEED HELP WITH HEALTH INSURANCE?**

**WE CAN HELP!**
CLICK HERE TO LEARN MORE

### UPCOMING EVENTS

- There are no upcoming events.

View Calendar → (http://chcfhc.org/events/)

### CATEGORY POSTS

Services for children
April 27, 2016

Seeking LICSW professionals
November 10, 2015

We treat opioid use disorder.
October 26, 2015

### FIND US ON FACEBOOK

Community Health Connection
We take great care of you.

Like Page

Be the first of your friends to like this

Behavioral Health | Community Health Connections



SUBSCRIBE TO OUR CHANNEL

| Community Health Connections |
| 3 videos |
| Subscribe    9 |



# Community Health Connections
## We take great care of you



## OUR HEALTH CENTERS

Fitchburg Community Health Center

Greater Gardner Community Health Center

Leominster Community Health Center

ACTION Health Services

## OUR SERVICES

Medical Services

Dental Services

Behavioral Health

Pharmacy Services

School Programs

## NEWSROOM

Services for children
April 27, 2016

Seeking LICSW professionals
November 10, 2015

We treat opioid use disorder.
October 26, 2015

**Administrative Offices**
326 Nichols Road
Fitchburg, MA 01420

978-878-8100



FQHC

© Community Health Connections | Website by Infinite Dezine