UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GORDON DUKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COMMUNITY HEALTH | ) |
| CONNECTIONS, INC. and TERRY | ) |
| OSBORNE II, D.O., | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION

NO. 18-10294-TSH

## ORDER AND MEMORANDUM ON DEFENDANTS' MOTION TO DISMISS (Docket No. 10)

**January 11, 2019**

**HILLMAN, D.J.**

Gordon Duke ("Plaintiff") brought a negligence claim against the United States of America ("Defendant") under the Federal Torts Claims Act ("FTCA") claiming that Dr. Terry F. Osborne, II ("Dr. Osborne") negligently prescribed him amphetamines, causing injury and damage after he relapsed into addiction. Defendant moves to dismiss Plaintiff's claim because he failed to timely file an administrative claims pursuant to the FTCA (Docket No. 10). For the reasons stated below, Defendant's motion is ***denied***.

## Background

The following facts are taken from Plaintiff's complaint (Docket No. 1) and assumed to be true at this stage of the litigation.

Beginning in late 2010 or early 2011, Plaintiff sought treatment for amphetamine dependency, with Adderall as his drug of choice. On or about January 24, 2012, Plaintiff was admitted to Emerson Hospital for detox and treatment for withdrawal. On or about February 2, 2014, Plaintiff was transferred to McLean Hospital's Ambulatory Treatment Center at Naukeag to continue his treatment in an inpatient program. Plaintiff remained at McClean until March 5, 2012, when he successfully completed the inpatient program.

In March 2012, Plaintiff became a patient of GGHC. In May 2012, Casie Short, P.A., prescribed Plaintiff Clonidine to ease his withdrawal symptoms. In July 2012, Plaintiff began treatment with Dr. Osborne and continued to see him until March 2014.

By August 2012, Dr. Osborne prescribed Plaintiff amphetamine-based medication. Dr. Osborne had access to Plaintiff's medical records which indicated he was a recovering amphetamine addict. Further, Plaintiff's mother told Dr. Osborne that Plaintiff was a recovering amphetamine addict. Nonetheless, Dr. Osborne prescribed, and Plaintiff accordingly took, several amphetamine-based medications such as Selegiline, Vyvanse, and Adderall. By September 2013, Plaintiff began to show signs of relapse.

Over time, Dr. Osborne increased the dosages of Plaintiff's amphetamine-based medications. By January 2014, Dr. Osborne was prescribing dangerous and potentially lethal amounts of amphetamine-based medications, including 100 mg daily of Adderall alone. By January 2014, Plaintiff had fully relapsed. Consequently, in May 2014, Plaintiff lost his job. Further, he suffered from paranoia, delusions, and sometimes could not sleep for days.

In September and November of 2014, Plaintiff was arrested in Rhode Island for illegally obtaining Adderall. At one of Plaintiff's court appearances, Dr. Osborne falsely informed the

prosecutor in Rhode Island Drug Court that Plaintiff was not drug dependent and that he did not struggle with addiction. Consequently, Plaintiff's case was removed from Drug Court.

Plaintiff has been hospitalized or otherwise treated multiple times for his addiction since being prescribed amphetamines by Dr. Osborne and continues to exhibit symptoms of neurotoxicity. Not until October 2015 did Plaintiff overcome his relapse into addiction triggered by Dr. Osborne's treatment.

On August 26, 2016, Plaintiff presented his claim to the U.S. Department of Health and Human Services pursuant to the Federal Tort Claims Act. On February 15, 2017, his claim was denied. On March 1, 2017, Plaintiff requested reconsideration by the U.S. Department of Health and Human Services, which was denied on September 15, 2017. The September 15, 2017 denial letter informed Plaintiff that, pursuant to 28 U.S.C. § 2401(b), he had six months within which to file suit in U.S. district court. Plaintiff then filed his claim with this Court on February 16, 2018.

## Standard of Review

*1. 12(b)(1) Motions and the FTCA*

Although the United States brings a 12(b)(1) motion to dismiss, the Supreme Court has held that "the FTCA's time bars are nonjurisdictional and subject to equitable tolling." *United States v. Kwai Fun Wong*, 135 S.Ct. 1625, 1638 (2015). Therefore, "dismissal cannot be determined under Rule 12(b)(1) but rather must be decided under Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56." *Holloway v. United States*, No. 15-CV-30016-MGM, 2015 WL 13229224, at *1 (D. Mass. Oct. 30, 2015), *report and recommendation adopted*, No. CV 15-30016-MGM, 2016 WL 1060835 (D. Mass. Mar. 17, 2016), *aff'd*, 845 F.3d 487 (1st Cir. 2017); *see also Morales-Melecio v. United States*, 890 F.3d 361, 367 (1st Cir. 2018) (noting that "post-*Kwai Fun Wong*,

motions to dismiss based on the FTCA's statute of limitations should now be brought under Federal Rule of Civil Procedure 12(b)(6) . . . or considered pursuant to Rule 56.").

Therefore, I must decide whether to treat Defendant's motion under the Rule 12(b)(6) motion to dismiss or Rule 56 summary judgment standard. Some courts have converted Rule 12(b)(1) claims into Rule 56 motions for summary judgment when considering timeliness claims under the FTCA. *See, e.g.*, *Holloway*, 2015 WL 13229224, at *1 (recommending converting defendant's 12(b)(1) motion into Rule 56 motion for summary judgment "[b]ecause both parties have submitted evidence on the issue of timely presentment" and "were constructively aware of the potential for conversion."); *Marcus v. U.S. Postal Serv.*, No. 14-cv-330 (JFB), 2015 WL 2389955, at *1 (E.D.N.Y. May 20, 2015) (converting a Rule 12(b)(1) motion to dismiss into a motion for summary judgment in light of *Kwai Fun Wong* and because both sides submitted evidence and consented).

"[W]here the relevant dates [in an FTCA case] are not evident in the complaint, the court may consult evidence outside the complaint, converting a motion to dismiss to a motion for summary judgment." *Ritchie v. United States*, 210 F. Supp. 2d 1120, 1123 (N.D. Cal. 2002); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgement under Rule 56."). I find, however, that the relevant dates are evident from Plaintiff's complaint and therefore consider the motion under the Rule 12(b)(6) standard. Consequently, I will not consider the materials that Defendant has submitted outside of the pleadings.

## 2. *12(b)(6) Standard*

A defendant may move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule

12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

## **Discussion**

Courts do not have jurisdiction over claims against the federal government, except where the government has expressly waived its immunity. *See United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352 (1979). The FTCA is such a waiver. *Id.* The FTCA, in relevant part, permits individuals to sue the government "for injury or loss of property, or personal injury or death caused

5

by the negligent or wrongful act or mission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b).

In order to bring a claim under the FTCA, a plaintiff must "present[ ] in writing to the appropriate Federal agency [his tort claim] within two years after such claim accrues," otherwise that claim is "forever barred." 28 U.S.C. § 2401(b). "[I]in construing the statute of limitations . . . we should not take it upon ourselves to extend the waiver beyond that which Congress intended." *United States v. Kubrick*, 444 U.S. 111, 117-18, 100 S.Ct. 352 (1979); *see also Patterson v. United States*, 451 F.3d 268, 270 (1st Cir. 2006) ("This limitations provision, ensuring that the government is promptly presented with a claim while the evidence is still fresh, is to be strictly construed in the government's favor."). In addition, however, courts should not "assume the authority to narrow the waiver." *Kubrick*, 444 U.S. at 118, 100 S.Ct. 352 (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 68-69, 76 S.Ct. 122 (1955)).

*1. Discovery Rule*

Generally, "a tort claim under the FTCA accrues when a plaintiff is injured." *Morales-Melecio*, 890 F.3d at 369. The exception to this general rule, however, is the "discovery rule" which holds that "the statute of limitations clock does not begin to run until the putative plaintiff knows the factual basis of both his injury and its cause." *Id.* (citing *Kubrick*, 444 U.S. at 119-22, 100 S.Ct. 352).[1] The First Circuit has further clarified that the requirement that a plaintiff know the factual basis of his injury and its cause is evaluated against the objective standard of what a "reasonable person *similarly situated* to the plaintiff would have known." *McIntyre v. United States*, 367 F.3d 38, 59 (1st Cir. 2004) (emphasis in original).

---

[1] The Court in *Kubrick* explained that the discovery rule was motivated in particular by medical malpractice claims "since many of the consequences of medical malpractice often do not become apparent for a period longer than that of the statute [of limitations], the injured plaintiff is left without a remedy." *Kubrick*, 444 U.S. at 120 n.7, 100 S.Ct. 352 (quoting Restatement (Second) of Torts § 899 cmt. e (1979)).

6

Whether the discovery rule applies is often a fact-intensive question and therefore are best resolved at the summary judgment stage. *See Abdallah v. Bain Capital LLC*, 880 F. Supp. 2d 190, 198 (D. Mass. 2012) ("Although determining whether the discovery rule, fraudulent concealment, or equitable tolling should apply in a case is a question of fact to be determined by the finder of fact, the court can grant a motion to dismiss if no set of facts would entitle the plaintiff to relief."); *In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*, 111 F. Supp. 3d 79, 84 (D. Mass. 2015) (noting that questions of timeliness of a claim are often best resolved at summary judgment as they usually involve fact-intensive inquiries into questions outside the scope of the pleadings). While "'[w]hat constitutes the accrual of a cause of action is a question of law . . . [,] when accrual actually occurred in a particular case is a question of fact' to be resolved by the fact-finder. 'In all cases to which the discovery rule applies, the inquiry is highly fact-bound and requires an evaluation of all of the plaintiff's circumstances.' Otherwise put, '[u]nless the evidence regarding the commencement of the running of the statute of limitations is so clear that the court can rule on the issue as a matter of law, the jury should decide the issue on appropriate instructions.'" *Patteson v. AstraZeneca, LP*, 876 F. Supp. 2d 27, 39 (D.D.C. 2012) (quoting *Brin v. S.E.W. Investors*, 902 A.2d 784, 795 (D.C. 2006)).

Here, Plaintiff presented his claim to the U.S. Department of Health and Human Services on August 26, 2016. Defendant contends that Plaintiff's claim accrued in January 2014, when Plaintiff alleges he had fully relapsed into amphetamine dependency.[2] Plaintiff, however, contends that his relapse caused severe mental impairments such as paranoia and delusions. Further, sometimes he could not sleep for days and continues to display symptoms of neurotoxicity

---

[2] Defendant argues in the alternative that Docket No. 11-1 demonstrates Plaintiff's claim accrued during his last visit with Dr. Osborne in April of 2014. Because this analysis is pursuant to Rule 12(b)(6), however, I will not consider materials outside of the pleadings.

today. Plaintiff argues that someone similarly situated would not have known his cause of action. *See Riley v. Presnell*, 409 Mass. 239, 240 (1991) ("An injury to the mind could interfere with the discovery of the cause of action. Here, Dr. Presnell has allegedly caused great psychological harm to Riley, and that very harm allegedly caused Riley to be unable to link the misconduct to the damage.").

Construing the facts pled in the light most favorable to Plaintiff, coupled with the acknowledgement that this is a fact-intensive inquiry best resolved at the summary judgement stage, I find that Plaintiff has plausibly alleged that a person similarly situated would not have been able to appreciate the factual basis of his injury or casually link it to Dr. Osborne's negligence.

*2. Equitable Tolling*

Plaintiff alternatively contends that, even if Defendant is correct that his claim accrued in January 2014, he is entitled to equitable tolling. *See United States v. Kwai Fun Wong*, 135 S.Ct. 1625, 1638 (2015) ("we hold that the FTCA's time bars are nonjurisdictional and subject to equitable tolling."). "It is '[o]nly in exceptional circumstances' that equitable tolling will extend a filing deadline. To this end, 'the heavy burden' of 'prov[ing] entitlement to equitable relief lies with the complainant." *Bartlett v. Dep't of the Treasury (I.R.S.)*, 749 F.3d 1, 10 (1st Cir. 2014) (alteration in original) (citation omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807 (2005). The First Circuit uses five factors when assessing a plaintiff's entitlement to equitable tolling: "(1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to the party

opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit." *Jobe v. I.N.S*, 238 F.3d 96, 100 (1st Cir. 2001).

The First Circuit has held that "mental illness may toll the time to file an administrative claim . . . but only if the plaintiff has 'show[n] that the mental disability was so severe that the plaintiff was '[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel.'" *Bartett*, 749 F.3d at 12 (alterations in original) (quoting *Mélendez-Arroyo v. Cutler-Hammer de P.R. Co.,* 273 F.3d 30, 37 (1st Cir.2001)). Further, this Court has noted that the effects of effects of drugs may justify equitable tolling of the statute of limitations until the incapacity was removed. *See Frye v. Nelson*, 231 F. Supp. 2d 394, 396 (D. Mass. 2002).

> Like the discovery rule, in the context of a motion to dismiss:
>
> Because the applicability of the equitable tolling doctrine often depends on matters outside of the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion . . . In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. For this reason, we have reversed dismissals where the applicability of the equitable tolling doctrine depended upon factual questions not clearly resolved in the pleadings. Similarly, we must reverse if the factual and legal issues are not sufficiently clear to permit us to determine with certainty whether the doctrine could be successfully invoked.

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quotation marks and citations omitted); *see also In re Fresenius Granuflo*, 111 F. Supp. 3d at 84 ("Questions of timeliness are often fact-intensive questions that are 'more appropriately applied at the summary judgment or trial stage of litigation.'") (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993)).

Defendant contends that even assuming Plaintiff's condition delayed the pursuit of his claim, reasonable diligence after October 2015 (when Plaintiff overcame his addiction) could have

9

resulted in his filing an administrative claim by April 9, 2016 (two years after his last visit with Dr. Osborne). While the accrual date is disputed, even assuming Defendant is correct, its argument is not necessarily persuasive. Indeed, courts have held that "the statute-of-limitations clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise reasonable diligence, whichever occurs earlier." *Luna v. Kernan*, 784 F.3d 640, 651 (9th Cir. 2015). Thus, if Plaintiff is entitled to equitable tolling here, the clock would only have started to run on his claim when he overcame his addiction.

Plaintiff alleges that Dr. Osborne's negligence led to a debilitating relapse which caused severe psychological impairments. Even assuming Defendant is correct regarding the accrual date of Plaintiff's claims, it is plausible that Plaintiff's struggle with amphetamines amounted to extraordinary circumstances precluding him from rational thought analogous to a mental illness that the First Circuit has held would entitle him to equitable tolling. Moreover, unlike a debilitating mental illness, Plaintiff's inability to act timely was directly caused by Dr. Osborne's negligence. Thus, Plaintiff may be even more entitled to equitable tolling as it would be patently unfair to allow a defendant to eschew liability by negligently incapacitating a plaintiff and consequently thwarting his claim on procedural grounds.

Therefore, because determining whether equitable tolling is proper is a fact-intensive inquiry dependent on matters outside of the pleadings and because I do not find that there is no set of facts that would establish the timeliness of Plaintiff's claim, Plaintiff has sufficiently pled that he is entitled to equitable tolling at this stage in the litigation.

## Conclusion

For the reasons stated above, Defendant's motion to dismiss (Docket No. 10) is ***denied***.

**SO ORDERED.**

                                                 **/s/ *Timothy S. Hillman***
                                                 **TIMOTHY S. HILLMAN**
                                                 **DISTRICT JUDGE**